UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

MICHAEL FAITH,

                          Plaintiff,           **MEMORANDUM & ORDER**
                                                           21-CV-06913 (JMA) (JMW)

              -against-

DARA KHOSROWSHAHI,
UBER TECHNOLOGIES, INC., UBER USA, LLC, and
RasIer-NY, LLC a/k/a RasIer, LLC a/k/a Raiser, LLC,

                          Defendants.
----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

Plaintiff Michael Faith brings this action against Defendants Dara Khosrowshahi, Uber Technologies, Inc., Uber USA, LLC, RasIer-NY, LLC a/k/a RasIer, LLC, a/k/a Raiser, LLC (collectively, "Uber" or "Defendants") arising from Defendants' termination of the parties' contractual relationship. Plaintiff asserts two claims against Defendants: (1) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); and (2) discrimination and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL").

Before the Court is Defendants' motion to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. (ECF No. 35). For the reasons set forth below, the motion is GRANTED.[1]

---

[1] Defendants move, in the alternative, to compel arbitration pursuant to N.Y. C.P.L.R. §§ 7501 et seq. The Court need not consider this portion of the motion because the motion is granted pursuant to the FAA.

## I.    BACKGROUND

**A.**    <u>Facts</u>

Uber is a rideshare company that engages in contractual relationships with transportation providers ("Drivers") to provide transportation to individuals. (Am. Compl. at 5, ECF No. 12.) Uber uses a mobile application, the "Uber Driver App," to direct Drivers to individuals in need of transportation. (<u>Id.</u> at 6.) In or around July 2017, Uber was granted permission to operate its business in Nassau and Suffolk Counties in New York. (<u>Id.</u> at 5.)

Plaintiff became a Driver for Uber in or about the summer of 2017.[2] (<u>Id.</u> at 5; Pl.'s Opp'n at 1, ECF No. 36.) The onboarding process required Plaintiff to submit a copy of his New York State Driver's License, which indicated his sex and race, to Uber. (Am. Compl. at 5.) Plaintiff was also required to upload a personal photo of himself to display on the Uber Driver App, which was viewable by the public and Uber's employees. (<u>Id.</u>) At the time Plaintiff created an account to use the Uber Driver App, Uber's applicable services agreement was the 2017 Rasier Technology Services Agreement ("2017 Agreement"). (Chinchilla Decl., Ex. C, ECF No. 35-3.) The 2017 Agreement contained an arbitration provision, which included notice of the Driver's right to opt out of arbitration within 30 days of executing the agreement. (<u>Id.</u> § 15.3.) According to Defendants' business records, Plaintiff accepted the 2017 Agreement on July 3, 2017. (Chinchilla Decl. ¶ 12.)

Plaintiff began driving full-time for Uber in 2018. (Pl.'s Opp'n at 1.) On November 25, 2019, Plaintiff accepted an updated agreement, the 2019 Rasier Technology Services Agreement ("2019 Agreement"). (Chinchilla Decl. ¶ 13.) Like the 2017 Agreement, the 2019 Agreement contained an arbitration provision with a 30-day opt-out period. (<u>Id.</u>, Ex. D § 15.) On December

---

[2]     The parties agree that Plaintiff began using the Uber Driver App in 2017, but the record is unclear as to the exact date Plaintiff created his account. (Am. Compl. at 5; Pl.'s Opp'n at 1.)

18, 2019, Plaintiff sent an email to Uber opting out of the arbitration provision of the 2019 Agreement.  (ECF No. 21 at 2, Ex. H17; Chinchilla Decl., Ex. H.)  In the email, Plaintiff expressed his desire to opt out of the arbitration agreement to the "fullest extent possible," regardless of his residence, email account, and phone number.  (Pl.'s Opp'n at 1; ECF No. 21 at 2, Ex. H17; Chinchilla Decl., Ex. H.)

In January 2020, Uber issued an updated agreement, the 2020 Platform Access Agreement ("2020 Agreement").  (Chinchilla Decl., Ex. E.)  On the first page, before the numerated sections, the 2020 Agreement states, "[b]y accepting this Agreement, you confirm that you have read, understand and accept the provisions of this Agreement and intend to be bound by this Agreement.  This Agreement is effective as of the date and time you accept it."  (Id. at 63.)  The arbitration provision begins in Section 13 and reads as follows:

> **IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW. YOU MAY CHOOSE TO OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE BELOW INSTRUCTIONS.  THERE ARE AND/OR MAY BE LAWSUITS ALLEGING CLASS, COLLECTIVE OR REPRESENTATIVE CLAIMS ON YOUR BEHALF AGAINST US.  IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH US, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BELOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH ANY SUCH CLASS, COLLECTIVE OR REPRESENTATIVE LAWSUIT.  THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.**

(Id. at § 13.)  The next subsection states that the 2020 Agreement is governed by the FAA or the "law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply."  (Id. at § 13.1(a).)  The subsection continues explaining the scope of

disputes covered by the arbitration provision, including any legal dispute, "past, present or future, arising out of or related to your relationship with [Uber] or relationship with any of [Uber's] agents, employees, executives, . . . subsidiaries or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates." (Id. at § 13.1(a).)

The next subsection of the arbitration provision includes a delegation clause, explaining that the following disputes must be resolved through arbitration:

> This Arbitration Provision applies to all claims whether brought by you or us, except as provided below. This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial. Except as provided below regarding the Class Action Waiver and Representative Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision.

(Id. at § 13.1(b).) The following subsection further details the scope of issues covered by the arbitration provision to include, "without limitation," "disputes between you and [Uber], or between you and any other entity or individual, arising out of or related to your application for and use of an account to use [Uber's] Platform and Driver App as a driver, . . . your contractual relationship with [Uber] or the termination of that relationship, . . . the nature of your relationship with [Uber] (including, but not limited to, any claim that you are [Uber's] employee), . . . retaliation, discrimination, or harassment and claims arising under . . . Title VII of the Civil Rights Act of 1964 . . . [or any] federal, state or local statutes or regulations addressing the same or similar subject matters . . . arising out of or relating to your relationship with [Uber] or the termination of that relationship." (Id. at § 13.1(c).)

4

The 2020 Agreement also sets the costs of any arbitration proceeding. (Id. at § 13.6.) In all cases except those of offers of judgment, "each party will pay the fees for its, his or her own attorneys and any costs that are not unique to arbitration, subject to any remedies to which that party may later be entitled under applicable law." (Id. at § 13.6(a).) The arbitration provision requires the parties to follow the JAMS Comprehensive Arbitration Rules & Procedures; however, the signing party to the agreement is only responsible for payment of the initial arbitration filing fee up to the amount required to initiate a lawsuit in federal court within the jurisdiction where the arbitration would be held. (Id. at § 13.6(b).) The provision explains that Uber will pay the difference between the initial filing fees paid and the amount required by JAMS. (Id.) Furthermore, the arbitration provision states that Uber will pay the arbitrator's fees in all cases as required by law, as well as "all fees and costs unique to arbitration. Otherwise, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." (Id. at § 13.6(c).)

The arbitration provision also notifies and instructs the Driver of his right to opt out of arbitration. (Id. at § 13.8.) It states that agreeing to the arbitration provision is "not a mandatory condition of your contractual relationship with [Uber]." (Id. at § 13.8(a).) As a result, a Driver may opt out of the arbitration provision "within 30 days of the date that [the] Agreement is electronically accepted by you," by sending "an electronic email from the email address associated with your driver account to optout@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver account, and the city in which you reside." (Id.) If a Driver does not opt out within 30 days of accepting the 2020 Agreement, the Driver and Uber "shall be bound" by the arbitration provision. (Id. at § 13.8(b).)

5

The arbitration provision concludes by stating that it "replaces prior agreements regarding the arbitration of disputes and is the full and complete agreement relating to the formal resolution of disputes covered by this Arbitration Provision." (Id. at § 13.9.) It further incorporates a severability clause, so that if any portion of the arbitration provision is found to be unenforceable, "the remainder of [the] Arbitration Provision will be enforceable." (Id.)

Finally, at the end of the numerated sections, the 2020 Agreement has text in bold that states: "[b]y clicking, 'Yes, I agree,' I expressly acknowledge that I have read, understood, and considered the consequences of this Agreement, that I agree to be bound by the terms of this Agreement." (Id. at 82.) To access the Uber Driver App, Drivers had to click on "Yes, [I] agree," which was presented twice on the screen, to confirm their acceptance of the 2020 Agreement. (Chinchilla Decl. ¶¶ 8, 14, 15, Ex. B.) Once a Driver confirmed acceptance, the 2020 Agreement was available to view online. (Id. ¶ 10.)

On January 7, 2020, Plaintiff accepted the 2020 Agreement. (Chinchilla Decl. ¶¶ 14, 19, Exs. F and G.) He did not opt out of the arbitration provision within the 30-day period. (Id. ¶ 18.)

Plaintiff continued his contractual relationship with Uber until September 11, 2020, when he alleges that he "was terminated from working with Uber." (Am. Compl. at 6.) He claims that his termination resulted from various discriminatory practices, including Uber's facial verification program, which prevented him from working at times, and Uber's management of a passenger complaint against him in September 2020. (Id. at 5–6, 8.)

**B.      Procedural History**

Plaintiff received a right-to-sue letter from the United States Equal Employment Opportunity Commission on September 13, 2021, and he commenced this action pro se on December 9, 2021. (ECF No. 1.) Plaintiff filed an amended complaint on February 28, 2022. (ECF No. 12.) On March 29, 2022, Defendants filed a pre-motion conference letter regarding a

6

proposed motion to compel arbitration of Plaintiff's claims pursuant to the FAA. (ECF No. 19.) Plaintiff filed a letter in opposition and requested a referral to the District's Mediation Advocacy Program. (ECF No. 21.) Defendants filed a letter reply on April 26, 2022, in opposition to Plaintiff's mediation request. (ECF No. 22.) The Court subsequently waived its pre-motion conference requirement and granted Defendants' request to move to compel arbitration.

## II.    STANDARD OF REVIEW

The FAA provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2). This provision reflects a "federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations omitted). Under the FAA, a party may move the district court for an order directing that arbitration proceed pursuant to the parties' written agreement. See Nicosia, 834 F.3d at 229.

In deciding motions to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." Nicosia, 834 F.3d at 229 (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).[3] All reasonable inferences must be drawn in favor of the non-moving party. See Nicosia, 834 F.3d at 229.

---

[3]  Plaintiff contends that Daniel Chinchilla is not a qualified witness and that the exhibits attached to the Chinchilla Declaration contain false information. (Pl.'s Opp'n at 2.) Under Federal Rule of Evidence 803(6), a record, "made at or near the time by someone with knowledge, [if] kept in the course of a regularly conducted activity of business, [and if made as] a regular practice of that activity," is admissible upon the "testimony of the custodian or another qualified witness," absent some indication of untrustworthiness. The Court concludes that the Chinchilla

The court must first determine whether an agreement to arbitrate exists between the parties. See Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101 (2d Cir. 2022) (citation omitted). The question of whether the parties have agreed to arbitrate is an issue for judicial determination by state contract law unless the parties clearly and unmistakably provide otherwise. See id.; see also Nicosia, 834 F.3d at 229 (citations omitted). The party seeking to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." Zachman, 49 F.4th at 101–02 (citations omitted). The moving party need not "show that the agreement would be enforceable—only that an agreement to arbitrate existed." Id. at 102 (citation omitted). The burden then "shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" Id. (citing Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010)).

If the court refers all claims to arbitration and the moving party requests a stay, then the FAA requires the court to stay proceedings pending arbitration. See Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015).

### III.  DISCUSSION

Defendants move to compel arbitration pursuant to the 2020 Agreement and request a stay of proceedings pending arbitration. (Defs.' Notice of Mot. to Compel, ECF No. 35.) Plaintiff opposes Defendants' motion and requests the Court to order mediation through the District's

---

Declaration and exhibits are admissible for the following reasons: (1) Chinchilla demonstrated that he is a qualified custodian of records as a paralegal at Uber, and his statements are based on his personal knowledge or review of Uber's records, (see Chinchilla Decl. ¶¶ 1–3); (2) Chinchilla laid the proper foundation for the records, stating that the attached records were kept in the course of regularly conducted business activity, (see id. ¶¶ 3, 6, 11, 15, 17, 19); and (3) Plaintiff's unsworn statement fails to show that the Chinchilla Declaration or attached exhibits indicate a lack of trustworthiness, see Fed. R. Evid. 803(6)(E). See Bakon v. Rushmore Serv. Ctr., LLC, No. 16-CV-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (admitting declaration by defendant's employee and attached exhibits because "[p]laintiff offers no rational reason to doubt the trustworthiness of [the declaration] or the records it relies upon"). Accordingly, the Court has considered the Chinchilla Declaration and attached exhibits in deciding the instant motion.

8

Mediation Advocacy Program. (Pl.'s Opp'n at 3.) For the reasons set forth below, Defendants' motion is granted and Plaintiff's request for mediation is denied.

**A.     Choice of Law**

The choice-of-law doctrine of the forum state—here, New York—governs the issues of contract formation. See Kai Peng v. Uber Techs., Inc., 237 F. Supp. 3d 36, 46 (E.D.N.Y. 2017) (citations omitted). Under New York's choice-of-law rules, "the court evaluates the 'center of gravity' or 'grouping of contacts,' with the purpose of establishing which state has 'the most significant relationship to the transaction and the parties.'" Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2d Cir. 2001) (citations omitted). The court applies the law of the place that "has the most significant contracts with the matter in dispute." Peng, 237 F. Supp. 3d at 46 (quoting Auten v. Auten, 124 N.E.2d 99, 101–02 (N.Y. 1954)); see also Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999) (same); O'Callaghan v. Uber Corp. of California, No. 17-CV-2094, 2018 WL 3302179, at *6 (S.D.N.Y. July 5, 2018) (same).

Here, New York has the most significant contacts with the matter in dispute. Plaintiff is a New York resident with a New York State Driver's license who signed up to use the Uber Driver App in New York. (Am. Compl. at 5.) The dispute involves issues regarding contract formation and employment practices in New York. Accordingly, the Court finds that New York law governs the issue of whether an arbitration agreement exists between the parties.

**B.     Validity of the Arbitration Agreement**

The Court must now determine whether an agreement to arbitrate exists between the parties. See Zachman, 49 F.4th at 101.

Under New York law, the formation of a valid contract requires an offer, acceptance, consideration, mutual assent, and intent to be bound. See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (citations omitted). A party may be bound to a "click-wrap"

9

agreement, such as the 2020 Agreement, by clicking a button declaring assent, "so long as the party is given a 'sufficient opportunity to read the . . . agreement, and assents thereto after being provided with an unambiguous method of accepting or declining the offer.'" Peng, 237 F. Supp. 3d at 47 (quoting Serrano v. Cablevision Sys. Corp., 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012)).

In Peng, the plaintiffs entered in contractual relationships with Uber and started working as drivers for Uber in 2015. 237 F. Supp. 3d at 44. In response to the plaintiffs' breach of contract allegations, Uber moved to compel arbitration. Id. at 40, 44. Because the plaintiffs spoke little to no English, they used a Chinese version of the Uber Driver App. Id. at 43–44. However, the 2015 Services Agreement, which contained an arbitration clause, was only available in English. Id. at 44. The court nonetheless found that the plaintiffs were bound by the arbitration clause because their acceptances of the agreements were clear and explicit. Id. at 48 (during the assent process, the screen went black with a large box that read, "**PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS AND AGREE TO ALL THE NEW CONTRACTS**.") Furthermore, the court found that there was no time limit for the plaintiffs to review the contracts. Id. at 49 (explaining that eagerness to begin driving and earning fares does not mean that the plaintiffs were coerced or compelled to click "YES, I AGREE" to continue working). The court noted that failure to read a contract is not a defense to contract formation. Id. at 49.

Here, as in Peng, the record establishes that Plaintiff assented to the 2020 Agreement. Plaintiff clicked on the "Yes, [I] agree" button when he initially signed up for the Uber Driver App in 2017, again when he assented to the revised 2019 Agreement, and again when he assented to the 2020 Agreement. (Chinchilla Decl., Ex. F, ¶¶ 9, 12–14.) Specifically, Defendants' business records show that Plaintiff assented to the 2020 Agreement by clicking "Yes, [I] agree" on January

10

7, 2020, and then completing trips later that same day. (Chinchilla Decl. ¶¶ 8, 14–15, 19, Exs. F and G.)

Plaintiff, however, asserts that he did not click on the "Yes, [I] agree" button confirming his assent to the 2020 Agreement. (Pl.'s Opp'n at 2.) He contends—without any actual evidentiary support—that his phone records and bank statements show that he did not work on January 7, 2020, and therefore he could not have accepted the 2020 Agreement. (Id.; ECF No. 21, Exs. H07–H09.) To defeat a motion for summary judgment—or in this case, a motion to compel arbitration—Plaintiff must "set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011); see also O'Callaghan, 2018 WL 3302179, at *5 (applying the summary judgment standard for review of a motion to compel arbitration and explaining that the "non-moving party may not rely on unsupported assertions, conjecture, or surmise") (citing Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)). Here, Plaintiff's unsworn statements and unsubstantiated allegations are insufficient to overcome Defendants' evidence, which indicate that he accepted the 2020 Agreement—and thus agreed to its arbitration provision—on January 7, 2020. See O'Callaghan, 2018 WL 3302179, at *7 (rejecting plaintiff's "bare assertion that he never assented to the arbitration provision yet continued to have access to the Uber App" as "without any factual basis"). The Court thus finds that Plaintiff assented to the 2020 Agreement, including its arbitration provision, on January 7, 2020.

Plaintiff also argues that the arbitration provision of the 2020 Agreement does not apply to him because he notified Uber of his intent to opt out of the arbitration clause in the prior 2019 Agreement. (Pl.'s Opp'n at 1; ECF No. 21, Ex. H17.) However, this purported opt out is irrelevant

11

because the 2020 Agreement—not the 2019 Agreement—is the operative agreement in this case.[4] This is because "[i]t is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supersedes the old agreement." Mumin v. Uber Techs., Inc., 239 F. Supp. 3d 507, 524 (E.D.N.Y. 2017) (citation omitted); see also Peng, 237 F. Supp. 3d at 51 (citing Roberts v. Edith Roman Holdings, Inc., No. 10-CV-4457, 2011 WL 2078223, at *3 (S.D.N.Y. May 19, 2011) ("New York law gives full effect to merger clauses . . . When the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished.")). The 2020 Agreement makes this principle clear by stating that its arbitration provision replaces prior agreements regarding the arbitration of disputes. So, even if Plaintiff in fact opted out of the 2019 Agreement's arbitration provision, he subsequently agreed to the 2020 Agreement and failed to opt out of its arbitration provision within 30 days. As a result, he is bound by the superseding arbitration provision of the 2020 Agreement. See Mumin, 239 F. Supp. 3d at 524; see also Peng, 237 F. Supp. 3d at 51; Uber Techs., Inc. v. Blossomgame, No. 20-CV-04842, 2021 WL 8317115, at *4 (E.D.N.Y. Oct. 29, 2021) (enforcing arbitration clause in later agreement despite plaintiff's opt out of previous agreement because plaintiff "could not prospectively opt-out of a contractual provision"), report and recommendation adopted (E.D.N.Y. Dec. 6, 2021).

Accordingly, the Court concludes that a valid agreement to arbitrate exists between the parties, and that Plaintiff failed to exercise his right to opt out of arbitration.

---

[4] Although Plaintiff assented to a subsequent agreement in March 2020, (see Chinchilla Decl., Ex. F), the 2020 Agreement is the operative agreement in this dispute because Plaintiff claims that his prior opt out in 2019 exempts him from future arbitration clauses in agreements with Uber, beginning with the 2020 Agreement. (Pl.'s Opp'n at 1.)

C.   **Delegation of Arbitrability**

The Court next analyzes whether there is clear and unmistakable evidence from the arbitration agreement that the parties intended the question of arbitrability to be decided by the arbitrator.  See Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120–21 (2d Cir. 2003) (citations omitted); see also Mumin, 239 F. Supp. 3d at 525 ("Where a court finds clear and unmistakable evidence that contractual parties agreed to arbitrate arbitrability, a party may nonetheless challenge the delegation of arbitrability itself as invalid for unconscionability.").  The "clear and unmistakable requirement" pertains to the parties' manifestation of intent, and not the agreement's validity.  See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 69 n.1 (2010).

Here, however, Plaintiff challenges the 2020 Agreement as a whole, and not the delegation clause of the arbitration provision alone.  (Pl.'s Opp'n at 3.)  If a party does not challenge the delegation clause specifically, then the court must enforce the arbitration agreement under 9 U.S.C. §§ 3 and 4.  See Rent-A-Ctr., 561 U.S. at 72; see also Greene v. Kabbalah Centre Int'l, Inc., 625 F. Supp. 3d 3, 17 (E.D.N.Y. 2022) (the court may only decide general challenges, like unconscionability and coercion, if the challenges are specifically directed to the delegation clause); McCoy v. Dave & Buster's, Inc., No. 15-CV-0465, 2018 WL 550637, at *8 (E.D.N.Y. Jan. 24, 2018) (finding delegation clauses valid and deferring enforceability challenges to arbitrator because plaintiff did not specifically challenge the delegation clauses); Vargas v. Bay Terrace Plaza LLC, 378 F. Supp. 3d 190, 196–97 (E.D.N.Y. 2019) (deferring questions of unconscionability and enforceability to arbitrator where plaintiff did not challenge delegation clause).

Even if Plaintiff had challenged the delegation clause specifically, its language clearly and unmistakably delegates issues of arbitrability to the arbitrator.  The delegation clause states that, except for the Class Action Waiver and Representative Action Waiver, the arbitration provision

13

"applies to any legal dispute, past, present or future, arising out of or related to your relationship with [Uber] or relationship with any of [Uber's] agents[.]" (Chinchilla Decl., Ex. E § 13.1(a).) The delegation clause further states that disputes subject to arbitration include "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision." (Id. at § 13.1(b).) This language "clearly and unmistakably demonstrates the parties' intent to delegate the gateway questions," including arbitrability, to the arbitrator. O'Callaghan, 2018 WL 3302179, at *8; see also Peng, 237 F. Supp. 3d at 52–53; Mumin, 239 F. Supp. 3d at 522–23.[5]

**D.      Unconscionability**

Although the Court has found that there is a valid agreement to arbitrate among the parties, and that the parties agreed to delegate disputes regarding arbitrability to the arbitrator, the Court may not enforce the delegation clause if it is procedurally or substantively unconscionable. See Peng, 237 F. Supp. 3d at 54. However, a court must treat a delegation clause as valid under the FAA unless a party challenges it separately from the arbitration agreement as a whole. See Rent-A-Ctr., 561 U.S. at 72–73 (rejecting plaintiff's unconscionability argument because it "clearly did not go to the validity of the delegation provision"); see also Peng, 237 F. Supp. 3d at 55 (explaining

---

[5]     Plaintiff asserts in passing that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26 (2021) ("EFAA") and N.Y. C.P.L.R. § 7515 exempt his claims from arbitration. (See Pl.'s Opp'n at 1.) Neither argument passes muster. First, the EFAA does not apply to Plaintiff's claims. Under the EFAA, "a plaintiff 'alleging conduct constituting a sexual harassment dispute or sexual assault dispute' may elect to render a pre-dispute arbitration agreement applicable to their case invalid and unenforceable." Olivieri v. Stifel, Nicolaus & Co., Inc., No. 21-CV-0046, 2023 WL 2740846, at *5 (E.D.N.Y. Mar. 31, 2023) (quoting 9 U.S.C. § 402(a)). But Plaintiff alleges employment discrimination by Defendants in violation of Title VII and the NYSHRL—not a "sexual harassment dispute or sexual assault dispute" that would trigger the EFAA's provisions. Second, for substantially the same reasons stated in Uber's brief, (Defs.' Mem. at 12–13), the Court finds that C.P.L.R. § 7515 does not apply to the 2020 Agreement's arbitration provision, and even if it did, it would be preempted by the FAA. See, e.g., Lee v. Engel Burman Grande Care at Jericho, LLC, No. 20-CV-3093, 2021 WL 3725986, at *7 (E.D.N.Y. Aug. 23, 2021) ("[T]o the extent that Section 7515 does not itself carve out agreements that are subject to the FAA, Section 7515 'is displaced by the FAA[.]' (quoting Concepcion, 563 U.S. at 341)) (collecting cases).

that a court is limited to review only the "unconscionability challenges aimed specifically at the delegation clause in the arbitration agreement"); McCoy, 2018 WL 550637, at *8 (deferring enforceability challenges to the arbitrator because "plaintiff does not separately challenge the enforceability of the delegation clauses").

Here, Plaintiff raises only a substantive unconscionability argument regarding the fees associated with arbitration. (Pl.'s Opp'n at 3; ECF No. 21 at 3.) Because he does not specifically challenge the delegation clause as unconscionable, the Court must treat it as valid under the FAA. Even if he had attacked the delegation clause itself as unconscionable, the Court would reject his challenge for the reasons stated below.

Under New York law, to find a contract unconscionable, there must be a showing of both procedural and substantive unconscionability. See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121–22 (2d Cir. 2010) (citing Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)). Procedural unconscionability concerns contract formation and lack of meaningful choice, while substantive unconscionability looks to the content of the contract. See id. (citing State v. Wolowitz, 96 A.D.2d 47, 67 (2d Dep't 1983)); see also Peng, 237 F. Supp. 3d at 55 (citing Matter of Conifer Realty LLC (EnviroTech Servs., Inc.), 106 A.D.3d 1251, 1254 (3d Dep't 2013)).

1.  **Procedural Unconscionability**

The ability to opt out of an arbitration provision is often a dispositive factor in rejecting procedural unconscionability challenges. See O'Callaghan, 2018 WL 3302179, at *9 ("When a party was afforded an opportunity to opt out, the agreement is not procedurally unconscionable."); see also Tsadilas v. Providian Nat'l Bank, 13 A.D.3d 190, 191 (1st Dep't 2004) (explaining that arbitration provision alone was not unconscionable because plaintiff could opt out without any

adverse consequences). Here, the delegation clause is not procedurally unconscionable because Plaintiff had 30 days to opt out of arbitration, (Chinchilla Decl., Ex. E § 13.8(a)), and therefore his contractual relationship with Uber was not conditioned on his acceptance of the arbitration provision and the delegation clause. See Mumin, 239 F. Supp. 3d at 525–26 (finding 30-day opt out window sufficient to negate procedural unconscionability); Peng, 237 F. Supp. 3d at 56 (same); Valle v. ATM Nat., LLC, No. 14-CV-7993, 2015 WL 413449, at *6 (S.D.N.Y. Jan. 30, 2015) (same for 45-day opt out window).

The Court must also examine the "size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." Am. Family Life Assurance Co. of N.Y. v. Baker, 778 F. App'x 24, 26 (2d Cir. 2019) (quoting Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988)). Here, the key language in the 2020 Agreement's arbitration provision was capitalized and bolded, (Chinchilla Decl., Ex. E § 13), which also counsels against finding it procedurally unconscionable. See Keylee Lawrence, et al. v. NYC Med. Practice, P.C., No. 18-CV-8649, 2023 WL 4706126, at *11 (S.D.N.Y. July 21, 2023) (finding that clear, capitalized language significantly militated against finding procedural unconscionability); see also Carr v. Credit One Bank, No. 15-CV-6663, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) (rejecting unconscionability argument because arbitration clause was clear and conspicuous with capitalized letters and bold print).

Additionally, there is a lack of evidence to suggest that the size and commercial setting of the transaction, or Plaintiff's experience and education, would render the delegation clause unconscionable. See Ragone, 595 F.3d at 121 (noting that even absence of college degree and imperfect grasp of English language are insufficient to find procedural unconscionability). Even

16

with the understanding that there may be unequal bargaining power between contracting parties, Plaintiff does not offer any specific facts demonstrating that any inequality warrants a finding of unconscionability. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable[.]"); see also Mumin, 239 F. Supp. 3d at 507 ("[I]nequality in bargaining position alone is not sufficient unless it is combined with high pressure tactics that coerce a signatory's acceptance of onerous terms." (internal quotation marks and citation omitted)). Plaintiff does not argue that Defendants used deceptive or high-pressured tactics, and as explained above, he was free to spend time to review and seek legal advice before signing the 2020 Agreement.

For all of the above reasons, the Court finds that Plaintiff has not shown that the delegation clause is procedurally unconscionable.

**2.      Substantive Unconscionability**

New York law generally requires procedural and substantive unconscionability to render a contract unenforceable; however, there are exceptional cases where a contract is unenforceable due to substantive unconscionability alone. See Ragone, 595 F.3d at 121–22 (citing Gillman, 534 N.E. 2d at 829). As a result, although Plaintiff has not carried his burden to show procedural unconscionability, the Court will briefly address his arguments regarding substantive unconscionability below.

Plaintiff appears to contend that the 2020 Agreement is substantively unconscionable because the cost to arbitrate is more than five times the cost of a court-appointed mediator. (ECF No. 21 at 3.) To resolve Plaintiff's challenge, the Court looks to the language of the arbitration provision, which states that "[e]xcept in the case of offers of judgment (such as Federal Rules of

17

Civil Procedure 68 or any applicable state equivalents), each party will pay the fees for its, his, or her own attorneys and any costs that are not unique to arbitration, subject to any remedies to which that party may later be entitled under applicable law." (Chinchilla Decl., Ex. E § 13.6(a).) Both parties must follow the arbitrator's rules—here, by JAMS Arbitration—which include an initial arbitration filing fee, but only up to the amount the party bringing the claim would be required to pay to initiate a lawsuit in federal court. (Id. at § 13.6(b).) Once the plaintiff pays its portion of the initial arbitration filing fee, Uber "will [then] make up the difference, if any, between the fee [the adverse party has] paid and the amount required by the JAMS." (Id.) The arbitration provision further explains that, when required by law, Uber "will pay the Arbitrator's fees and costs unique to arbitration. Otherwise, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." (Id. at § 13.6(c).)

The Supreme Court has indicated that a challenge to arbitration fees must be viewed as a "fee-splitting arrangement . . . for the arbitration of enforceability" rather than "for arbitration of more complex and fact-related aspects of the [claim.]" Peng, 237 F. Supp. 3d at 57 (quoting Rent-A-Ctr., 561 U.S. at 74); see also Kuehn v. Citibank, N.A., No. 12-CV-3287, 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012) (rejecting plaintiff's unconscionability argument regarding fee-splitting arrangement because plaintiff focused on "the arbitration agreement as a whole, rather than the delegation agreement"). Courts applying New York law have refused to find that "fee-splitting provisions in arbitration agreements are unenforceable where plaintiffs have not affirmatively demonstrated that the fee-splitting provisions would preclude them from pursuing their rights in the arbitral forum." Peng, 237 F. Supp. 3d at 57 (citing Brady v. Williams Capital

18

Grp., L.P., 928 N.E.2d 383, 384 (N.Y. 2010) and Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 292–93 (S.D.N.Y. 2002)).

Plaintiff has failed to show that the fee-splitting provision at issue is substantively unconscionable. First, Plaintiff has not made an affirmative showing of his inability to pay for arbitration—he merely points to the difference in costs between private arbitration and a court-annexed mediation. See Stewart, 201 F. Supp. 2d at 292–93 (holding that fee-splitting provision was not unconscionable because plaintiff had not "submitted any proof as to her ability to pay or proffered any evidence regarding her expected costs in litigation for purposes of analyzing the cost differential between arbitration and litigation," and thus had failed to establish that the cost of arbitration "effectively would deny her an adequate and accessible substitute forum to resolve her statutory rights" (citation and internal quotation marks omitted)). Second, the 2020 Agreement limits the fees for which a Driver may be responsible to only those fees or expenses they would bear if the action were maintained in this Court. (See Chinchilla Decl., Ex. E § 13.6.) The Court "therefore cannot find that Plaintiff[] would be prevented from arbitrating a claim that [he] could otherwise afford to pursue in court[.]" Guan v. Uber Techs., Inc., 236 F. Supp. 3d 711, 733 (E.D.N.Y. 2017).

Accordingly, the Court finds that the delegation clause in the 2020 Agreement is neither procedurally nor substantively unconscionable and therefore may be enforced.

E.     **The Action Is Stayed Pending Arbitration**

The FAA requires a stay of proceedings pending arbitration if a court refers all claims to arbitration. Katz, 794 F.3d at 345. Because the Court grants Defendants' motion to compel arbitration, the case must be stayed pending arbitration of Plaintiff's claims.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration is GRANTED.

These proceedings are stayed pending arbitration of Plaintiff's claims.

**SO ORDERED.**

Date:  August 16, 2023
Central Islip, New York

                                              /s/   (JMA)
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE